All right, our next case is the Wall Guy v. FDIC. Just so we're clear here, the appellant, represented by Mr. Cook, has an opening argument of 17 minutes, followed by Mr. Grasco for 18 minutes, and then it comes back to Mr. Cook for a 3-minute rebuttal and to Mr. Grasco for a 2-minute rebuttal. So that's how we'll operate. Mr. Cook, we'll hear from you. May it please the Court, thank you for this opportunity to orally argue the case at hand. This is one of the few times my client's actually seen his case argued in the courtroom. We had the jury trial, he saw it there, and then he saw the post-judgment motions. Other than that, there has been no in the courtroom where you can see me deliver the case. Everything else has been done on briefs, whether it be at the West Virginia Supreme Court or in district court. There were no hearings. So with that in mind... How do we have jurisdiction to hear the case? Sure, I appreciate the question, thank you. Under GOMPO and Partners, which I cited in my briefs, Partners is a December 2023 case, and GOMPO is a First Circuit 22 case. The Notice of Appeal is supposed to be a simple document that provides notice that the party is appealing. I did file a Notice of Intent to Appeal in this case, April 11th of 2021. And what were you appealing then? What was your notice? Well, there was an interlocutorial order that had been entered, but there was also a judgment that followed that, that was entered, and I filed the notice. When I did, I specifically indicated we wish to pursue appeal on the 59E motions, which we knew were incoming based upon resolution. What about the separate pledge agreement order that you challenged? That wasn't part of a 59E motion. And the rule seems to require that, without any qualification, that there be a new Notice of Appeal. So how do we have jurisdiction in particular for that? Well, first of all, in the docketing statement, which serves as a functional equivalent of a Notice of Appeal, under the cases I cited, in the docketing statement, I specifically referred to what the FDIC had done by violating the pledge agreement and what the court had done. Right, but when I look at the jurisdictional section of that, you have the date of entry of the order appealed from, March the 8th, 2021, which order is no more because of the later decisions of the court, and then there's a date ordered entering disposing of any post-judgment motion, and you cite those. But there's nothing in there that deals with the pledge agreement order. Well, Your Honor, I will address that by, under the rules, under the merger rule, under 3C4, any applicable orders that relate into the final orders certainly come into play. So the court has jurisdiction to that. In my initial notice, I did say 59E etc. We knew there were other rulings coming down. And it's ironic because this court can address the relief we're getting at, out of the very first order. Summary judgment should have been granted at the very beginning, because the FDIC had violated the pledge agreement. And that was brought to the court's attention literally two days after the claims period expired. Why would merger apply here? When we think about this pledge agreement order, it was a post-judgment order that was unrelated to the merits that were addressed in that 2023 judgment. It was addressed in the original 2021 order. The court was advised, like I say, of our motions to enforce the pledge agreement very early in this case. There were a lot of delays. In 2021, we had already been in district court since May of 2020. So the merger rule says that all orders come in. They don't have to be specifically laid out. Simply the notice of appeal... Is your view that the merger rule overrides the specific rules of appellate procedure that require a notice of appeal? Yes, I believe, based upon GOMPO and partners, that when they discuss about the 2021 amendments, they specifically talk about traps for the unwary, things like that. We started this case with, we are appealing, we are challenging. And you'll hear more of that, hopefully, later in this argument. What does that have to do with the pledge agreement, though? I mean, you've got the initial judgment that gives you damages. And then there's a later argument that the FDIC sold some property they weren't supposed to sell or something along that line. But how does that relate to the initial order? And how is a party to litigation supposed to... But I did identify it in the docketing statement, which is functional equivalent. We did specifically challenge the violation of the pledge agreement in there. And another big concern with that, we were removed from state court involuntarily. When the FDIC moved us to federal court, they were supposed to provide all documentation from the underlying cases. One of the major things they left out was the pledge agreement hearing that I've cited, the April 23rd, 2019 hearing, in which the court extended the pledge agreement. The main reasons were exactly why we're here today. We were concerned about the bank going under. We were promised and told, you know, pick four properties. We helped select the properties to protect my client. When we did that, that was because the bank couldn't post the cash bonds. So the pledge agreement wasn't produced to the court. Had the court had all these documents when they should have, when we were arguing violations, I had to go supplement the record. We had to bring those transcripts before the court. And it wasn't then that the FDIC challenged any of this. It was only when the citizens of my community were coming forward to the bank saying, hey, our property is impaired and we were told it wouldn't be because this would all magically just go away. One of the huge problems here, and even today and even in the orders, my client's listed as the borrower. He is a claimant. We were there with a claim under an administrative process. You can look at our pleadings. When this event happened, we were very excited to know, hey, here they are to save the day. Here comes the FDIC. You can see that in our initial claim letter. What's so unusual about this process is there was none. Once I filed the initial claim and I said anything left that we need to do to perfect our claim, there was no response. And they communicate by email for everything. No response. Only a written letter denying our claim with no explanation sent regular mail on the last day before the close of the claims process received by my client with a number to call. We call the number and say, hey, we got more things we want to pursue here. There's a U.S. code section about things you can do to enhance your claim or talk about your claim. We were told by the letter none of those would be followed. You're simply denied no explanation. When we went back to court, we raised all these issues on summary judgment. And one of the big issues, there was a federal stay in place when the FDIC went and sold property under that pledge agreement. And if you go back and read that trial transcript, the banking lawyer said you'll be protected because of the pledge agreement if a receiver bank comes in, if there's receivership, FDIC. There's another reason this stuff's so important. If you go back to the very beginning of our case, our claims, the FDIC reviewed these. They are not exempt under 1821. What does any of this have to do with the original, maybe it doesn't, with the original jurisdictional question, even for these later 2023 orders that did away with the 2021 order? I mean, wasn't there a notice of appeal that needed to be filed under the rules at that point? It was filed as the functional equivalent as the docketing statement, yes. It was also filed initially, which preserves our right until the final appealable order. If you look at Rule 4, when you read Rule 3 and 4, I brief these. And what did the docketing statement say that you're saying is the functional equivalent of a notice of appeal? As the court said, if you look at the issues and the statement of facts, in those sections, we specifically pointed out. Okay. So where in the JA can I find the functional equivalent of a notice of appeal? It's in your own records under DE. That's right. That's what the JA is. So what's the page number? It's not in the JA. It's somewhere else. Well, yes, it was filed with this court in response to your jurisdictional orders, which is exactly what the cases I've cited have said. Maybe you can just read to me the language from the docketing statement that you're saying is the functional equivalent of a notice of appeal. I will use, if I may, my rebuttal time, and I will provide the specific language if that's possible. Okay. That seems pretty key to getting jurisdiction here, so that would be good. Okay. It's definitely near the end of our issues, but I did plainly say the breach of the pledge agreement needed to be reviewed by this court. Are you talking about in your brief you said it? No, not just the brief. Oh, in the docketing statement, the DE-33. Okay. Now, another thing I want to point out. We received a jurisdictional order from this court which said we were stayed pending the review and the final order pending the review. And the rules say we're saved by filing our notice of appeal. We are supposed to come back, and the order from this court said to notify this court of the status, which we did, and we did it in a timely manner, and I raised all the issues. And if you look at the GOMPO decision, it says the notice is simply a formality, and it says that cases should not be dismissed on technicalities. You agree the notice of appeal is jurisdictional. But there is one. There was one filed early, and there's also one filed that's the functional equivalent. Mere technicalities are not supposed to kick a case out. And that's what you're going to read to me on rebuttal, the functional equivalent language, right? I will. Okay. Let's be clear. I was going back trying to figure out this docketing. We had two unpublished opinions that allowed that, and in both instances we allowed it, seeing it had the functional equivalent. Here you've got a pledge agreement. As I understand the date, it was in until November 17, 2022, and the docketing statement is then in March of 2023. Is that correct? What the court did was forced us to take alternate collateral and denied my motion. Under our trust deeds and mortgages under Rule 10, we were entitled to full compensation within 30 days. Those deeds and mortgages were recorded. We often notified the FBI. So what dates are you using? I'm saying the pledge agreement was entered in November 2022, and the docketing statement, even if we accept it, but it's only two unpublished opinions that really go there. That's not hard law that that docketing statement is a notice of appeal. But if we go there, it was filed in March of 2023. So where are you moving that November 22 date? How are you moving that? Because in the final orders they dismissed our claim. What happened in the November order is they forced us to take substitute collateral. We were directed to accept something other than the properties because they'd already breached and sold those. When was the pledge agreement entered into? Well, the pledge agreement was initially entered following our original state court trial. However, after the Rule 59 motion. When was the order for the pledge agreement? Back in October of 2018. And then it continued forward, and it was again renewed on the April 23, 2019 hearing, where the bank couldn't post bond and surety, which is critical to a lot of our other arguments. That's an exception to FIERA. The reason they posted the bond and surety, they couldn't post a cash bond here. They posted the property, and then they failed to disclose that they had done that or they had extended it as bond or surety. So it extended the pledge agreement. Those remained recorded at all times that the FDIC simply violated the federal stay, sold this property literally a month. They're brought in in May, and in June they've already sold the property. The claims process was still pending. We were still trying to prove to them, but we didn't receive any communication. It's not like they said your claim is denied or invalid for any reason. They simply waited until the claims period expired and mailed us a simple one-sentence letter. Ultimately, what are you seeking? I mean, at this point, what have you received and what are you seeking? Well, my client, who won a jury verdict, who won trials, has not received a single penny ever. In fact, the bank overcollected from him over half a million dollars. That's in the consolidated case, the companion case, that should have been brought under Rule 13a. What remedy are you asking from us? We would like you to remand a district court, order direct payment of his claim. He's not a borrower. He's a claimant. He has a claim for over half a million dollars and secured property that was sold. They sold $870,000 to cure a debt that was barely over $300,000. And he had paid on that debt. He paid hundreds of thousands of dollars on the debt. So they really had a lot of money they've owed him in the companion case throughout this whole time. That's a case this court consolidated in there. In addition, we're asking for the... Hold up. Hold up. Sure. Where is this companion case? It's 03-05. Okay. Where is it pending? Or is it pending? The court consolidated it with this case. And then essentially tried to wrap it up in this case where they switched to a judgment nonwithstanding the verdict. And then we're puzzled as to how he has owed money. And yet he somehow... They switched the verdict from us winning to the FDIC. There's still missing funds. There's missing money. That's never been turned over. There's the judgment my client was ordered. Even if you look at just the remitted judgment, which we were trying to appeal, which West Virginia law supports our jury verdict. That should have never been entered. But even if you go with that... You accepted the remitted judgment. We had to because the federal judge ordered us either accept remitted or new trial. It's impossible... So you didn't have to. You could have had a new trial. But the new trial at this point... We did accept it. And we lawfully accepted it. And we expected to get it. In addition, the court in its memorandum order said we're going to wrap up the other case in this where we're expecting to get over another half a million dollars worth of proceeds. My client would have been very close to the original jury verdict when you give them those two numbers. The 523-024... Mr. Cook, you're over time. If you want to wrap up very quickly... Well, first of all, this court clearly has jurisdiction. We filed a notice of appeal. We stated the order. And you also... You don't have to look for that docketing statement language for me. I found it where you list the issues. Is that what you're talking about? Yes. Okay. Thank you. All right. You've got some rebuttal time, Mr. Garrisco. So tell us about our jurisdiction first. Certainly, Your Honor. John Garrisco on behalf of the FDIC as Receiver for the First State Bank. With respect to jurisdiction, we initially flagged this issue in our jurisdictional statement of our red brief and cited to this court's unpublished decision in Gracie from 2020, which considered facts quite similar to these, where Federal Appellate Procedure Rule 4A4B Romanette 2 requires filing a new or amended notice of appeal after a ruling on a post-judgment motion or a judgment's alteration upon that motion. In its supplemental briefing order, this court directed us to look at the entirety of the docketing statement that was filed by the wall guy. As we pointed out with respect to Gracie, the jurisdictional section of the docketing statement specifically says, what order of judgment are you appealing from? And the answer the wall guy gave was something that was entered in March of 2021, and Gracie indicated that that was not sufficient to designate the judgment or appeal from as required by Federal Rule 3C. But this court directed us to go beyond that to the entirety of the docketing statement and asked us to look at the lengthy narrative in the wall guy's docketing statement asking about the issues in the case. And I believe that's the language that he directed Judge Thacker to in the issues and nature of the case, where he talks about what he referred to as the district judges essentially giving the FDSCA J&OB that that was error. And that's what the wall guy was referring to when he talked about that docketing statement being the functional equivalent. Our view is that the docketing statement is internally inconsistent. It's almost at war with itself. You have a jurisdictional statement that says you're appealing from a March 2021 order, and you have the issues and nature of the case which go to basically laying out the entire seven plus years of this case. And certainly the Supreme Court has said that Rule 3 should be liberally construed. And this court pointed out the Garcia case that we cited, especially for pro se litigants. Here, of course, we don't have a pro se litigant, so there may not be as much liberal construction involved. But again, here we not only have a plaintiff who did not file a second notice of appeal, but even the so-called functional equivalent of it is hardly unambiguous in stating exactly whether the 2023 judgment, much less the pledge agreement in order of intervening, is being appealed. So has the FDIC changed its position on jurisdiction? Because in your opening brief, as you said, you raised the issue. But then in the supplemental briefing we asked for it, it seemed like you said there is jurisdiction. Well, Your Honor, we indicated that we believe that there arguably could be jurisdiction. And the hedge, if you want to read that as a hedge, is because the docking statement is a hedge. It's not really consistent in what it's saying. And if there's anything that gives this court jurisdiction over any of the orders that are still alive in this case, the 2022 or 2023 orders, it has to come from the docking statement. And so we believe that even with liberal construction, you have a counseled appellant, and if this court were to find appellate jurisdiction here, it would be at the outer limits, we believe. But obviously it's this court's decision. We can't concede appellate jurisdiction regardless. Right. Is the docking statement sufficient to be a functional equivalent? I mean, it did refer to the 2023 judgment in the issues section of that document. Is that sufficient? Your Honor, the closest case I've seen is the Bracey case, which focused on the jurisdictional section of the docking statement. The issues and nature of the case narrative in the docking statement creates some ambiguity. Because there, the wall guy does complain about what the district court did in the 2023 judgment. So again, we think this is not a cut and dried issue. We understand that Rule 3 is liberally construed. But even with that, in a case where we don't have a pro se litigant, we believe that if we could concede this court's appellate jurisdiction, we cannot. So I assume if we affirm the 2023 judgment, then the pledge agreement would be moved? Yes, we believe so. The purpose of the pledge agreement was to secure the wall guy's interest in the judgment. At the time the bank failed, that judgment had been remitted down to $523,000. And as Judge Thacker pointed out, subsequently in March of 2021, after the district judge adopted the state court's judgment, the wall guy then accepted that rematter. And the pledge agreement accounts for that. It says when there's a remitter, the parties are going to work together in good faith to renegotiate a pledge agreement to account for the reduced amount of the judgment. And that led to the litigation in October of 2022, well after the March 2021 notice of appeal, where the FDIC asked the district court to enforce the pledge agreement to free up the properties which had been leaned since 2018, even though the pledge agreement expressly stated it was a short-term remedy, and offered to replace those properties with a letter of credit in the amount of the remitted judgment. But Judge Wynn, as you pointed out, we now have a situation where there's a zero judgment if this court does affirm the 2023 judgment. And the pledge agreement accounts for that too. It says that if the verdict is vacated or a new trial granted, the wall guy shall release all his liens. In other words, when the trial court vacates the wall guy's judgment, the liens go away. So once the district judge entered the 2023 judgment, which as the court noted, vacated the 2021 judgment, there was no security after that. So the borrowers are clueless. I mean, it starts out, you've got a juror verdict, 1.5 million. Your opponent says, they end up with nothing on this, and they've not gotten anything out of this case. I mean, what's the posture of this case, and where does it go in terms of the outcome of the case? Well, Your Honor, the left-unmentioned in my friend's opening was that the district court vacated the 2021 judgment and entered the 2023 judgment in favor of the FDIC because the appellant's claims, whether you call them borrower, claimant, plaintiff, the appellant's claims are barred by 12 U.S.C. 1823E and 1821D9A because they're based on an alleged agreement to fund that does not meet the four categorical recording requirements of 1823E. So you can't sue for a breach of contract? They cannot sue for a breach of this alleged contract to fund these loans. That's correct, because the agreement they're relying on, this alleged failure to fund, is not memorialized in any of the records that are part of the record of this case. The wall guy had the opportunity before the district court in response to the FDIC section 1823E argument. Also had an opportunity before this court in two merits briefs, not counting the jurisdictional supplemental brief, and also an oral argument to point to where in the record is a document which establishes that First State had an obligation to fund that meets all of the four categorical recording requirements of 1823E. It's not there and the wall guy hasn't alleged that it is. So that takes care of the 2023 judgment, and again, even if we believe that the wall guy security under the pledge agreement went away when the district judge vacated the 2023 judgment, but this court's affirmance of the 2023 judgment would basically just, you know, it would keep the lack of security a lack of security. And if this court has any other questions on the merits with respect to 1823E, or if you have any questions on the pledge agreement, we also... No, thank you very much, Mr. Carrasco. You do have a couple minutes in rebuttal if you choose to use it, and we'll now hear from Mr. Cook. I think it's absolutely critical to point out that what he's saying isn't factually true about the pledge agreement. While that is what it says, what happened is the bank could not post a bond. So they went to Judge Howard in state court and said, let us modify, let us change the pledge agreement. That is why the language is so critical in that transcript that I had to supplement that was never given to the court. But that transcript and the order that flows from it from the state court left the pledge agreement in effect to protect us. And we stated all those things. We're definitely worried that you can read the transcript. I'm saying we're worried the bank's going to go under. We need protection. And the bank's lawyer said, you'll have it. But didn't you say the transcript was never provided to the court? No, I supplemented it. Okay. They were supposed to provide everything to court. When I realized, because they kept saying, you don't have any authority, where are you getting this? I'm like, because you haven't given the court. There were numerous times the court had to order them to turn over more records. Another thing that's critical for you guys to know that you don't see anywhere. My office was literally a block and a half from this bank. When it closed, I know where the records went. The state police came in and took everything. You've got it in your records. There was a bank loan officer that was convicted of federal fraud. This bank, they seized the records. There was ongoing investigations. But the records are secure. When they say we didn't meet, I proved it with the transcript. What's your response to 1823E? He says there's nowhere in the record that there's a document that meets all four requirements of 1823E. One of the loans is an SBA loan. The government records exist. The SBA loan is in the appendix. Those things are in there. But in addition, there's another consolidation loan. That record, I questioned them. I don't know how I knew at the time, but I questioned Andrew Flanningham, the vice president. It's in the transcript. The FDIC reviewed it. The board of directors reviewed it. It was approved. The stamp on the document for the trust deeds shows that all of the things 1823E1 require were done by the bank. If you look, I cited it in my brief, that the notary stamp states all those things by the signature of the bank, that all of those things were complied with. In addition, we have all of those records that were removed by the police to investigate this. My client produced that. It was a stipulated contract at the jury trial. They agreed there were two contracts here. They would have met all the four corners because one of them is a government loan. The other one was met by the notary stamps and the documents. Yes, and it's $230,000. So, yes, there is a lot of things. But E2 totally protects us. Any bond or surety is exempt from FIERA. We shouldn't even be talking about it. That's why I put up the protections. That's why that transcript is so important, the one they left out for whatever reason. Thank you very much, Mr. Cook. Mr. Grasco, anything further from you? Your Honor, I would just indicate that there are no SBA loan documents in the record that meet the four categorical requiring requirements. But this rebuttal time is for my cross-appeal. I filed a cross-appeal asking this court to remand the case for a new trial if it reverts the 2023 judgment. We think the 2023 judgment should be affirmed, which would make our cross-appeal move. Thank you very much. We'll come down to Greek Council and move on to our last case.
judges: G. Steven Agee, James Andrew Wynn, Stephanie D. Thacker